Docusign Envelope ID: DB054D74-84F1-4A56-8E10-4D77FB1AD790

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| NBCUNIVERSAL MEDIA, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>   Defendants. | Case No. 26-cv-02690<br><br>**Judge Thomas M. Durkin**<br><br>**Magistrate Judge Laura K. McNally** |

## Declaration of Monique Cheng Joe

## DECLARATION OF MONIQUE CHENG JOE

I, Monique Cheng Joe, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am the Senior Vice President, Head of Brands and Content Intellectual Property, for NBCUniversal Media, LLC ("NBCUniversal" or "Plaintiff"). I am knowledgeable about Plaintiff's business activities, business records, products, trademarks, and copyrights owned by Plaintiff. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Plaintiff is one of the world's leading media and entertainment companies, creating world-class content distributed across its portfolio of film, television, and streaming. One of Plaintiff's most successful television series is The Office, which originally aired from March 2005 until May 2013. The Office ran for a total of 201 episodes across nine seasons, with millions of views per episode. Its top-rated episode, season five's "Stress Relief," received over 24.6 million views at the time of its premiere. Over the years, the show became a cultural phenomenon and a fixture in modern television and comedy. Today, it remains a beloved series, continuing to attract new fans worldwide.

4. The Office, adapted from the BBC series of the same name, followed the everyday lives and workplace antics of the fictional Dunder Mifflin Paper Company, Inc.'s ("Dunder Mifflin") Scranton office in the form of a mockumentary. Steve Carell played Michael Scott, the regional manager of Dunder Mifflin. One of the many quirks of working at Dunder Mifflin included Michael Scott's annual "Dundie" awards, which was traditionally

2

Docusign Envelope ID: DB054D74-84F1-4A56-8E10-4D77FB1AD790

held at the local Chili's restaurant. The season two premiere episode "The Dundies" is considered by some to be pivotal to the series' success as it helped establish the series' unique blend of comedic and heartfelt storytelling.

5. The series also followed the Dunder Mifflin team outside of the workplace. For example, the series depicted the fictional Schrute Farms, a beet farm and bed and breakfast owned and operated by Dwight Schrute, Michael Scott's assistant. Schrute Farms is known for its beet-themed experiences and "agrotourism" attractions. Given viewership's positive reception and the now legacy of the farm, Schrute Farms merchandise has become a staple among fans.

6. The Office received critical acclaim throughout its run, winning, among other awards, five Primetime Emmy awards, including Outstanding Comedy Series in 2006, Outstanding Writing for a Comedy Series in 2007, and Outstanding Directing for a Comedy Series in 2009. The cast likewise gained notoriety and acclaim through the series, with several members receiving nominations and awards for their work on the show. Notably, Steve Carell won a Golden Globe for Best Actor in a Comedy Series in 2006 for his depiction of Michael Scott.

7. Today, The Office has been licensed in over 230 territories, airing on numerous television networks and streaming platforms around the world. The Office is also currently one of the most-watched series on the Peacock platform, with over 1.7 billion hours of viewership and accounting for more than seven percent of all-time Peacock usage.

8. Products sold under the NBCUniversal brand and associated with The Office include items such as apparel, accessories, home and office décor, and souvenirs (collectively, the "The Office Products"). The Office Products are distributed and sold to consumers throughout

3

the United States, including in Illinois, through authorized retailers and websites, such as Walmart, Target, and Hot Topic, and the official nbcstore.com website and Plaintiff's Amazon store.

9. Plaintiff incorporates a variety of distinctive marks in the designs of its various The Office products. As a result of its long-standing use, Plaintiff owns common law trademark rights in its trademarks. Plaintiff has also registered its trademarks with the United States Patent and Trademark Office. The Office products often include at least one of Plaintiff's registered trademarks. Often several of Plaintiff's marks are displayed on a single The Office product. Plaintiff uses its trademarks in connection with the marketing of The Office products, including the following marks which are collectively referred to as the "THE OFFICE Trademarks."

| Registration Number | Trademark |
|---|---|
| 5,235,217<br>7,762,967 | DUNDER MIFFLIN |
| 7,576,006<br>7,584,331 | DUNDIE |
| 7,972,047<br>7,972,035<br>7,972,034 | SCHRUTE FARMS |

10. The above U.S. registrations for the THE OFFICE Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. THE OFFICE Trademarks have been used exclusively and continuously by Plaintiff for many years, and have never been abandoned. True and correct copies of the United States Registration Certificates for the THE OFFICE Trademarks are attached hereto as **Exhibit 1**.

11. THE OFFICE Trademarks are distinctive when applied to the The Office Products, signifying to the consumers that the products originate from Plaintiff and are manufactured to Plaintiff's high-quality standards.  Whether Plaintiff manufactures the products itself or

licenses others to do so, Plaintiff has ensured that products bearing its trademarks are manufactured to the highest quality standards.

12. The innovative marketing and product designs of the The Office Products have enabled the NBCUniversal brand associated with The Office to achieve widespread recognition and fame and have made the THE OFFICE Trademarks some of the most well-known marks in the entertainment industries. The widespread fame, outstanding reputation, and significant goodwill associated with the Plaintiff and The Office have made the THE OFFICE Trademarks invaluable assets of Plaintiff.

13. Plaintiff has expended substantial time, money and other resources in advertising and promoting the THE OFFICE Trademarks. In fact, Plaintiff has expended millions of dollars in advertising, promoting, and marketing featuring the THE OFFICE Trademarks. The Office Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the THE OFFICE Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. The Office Products have become among the most popular of their kind in the U.S. and the world. The THE OFFICE Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the THE OFFICE Trademarks is of incalculable and inestimable value to Plaintiff.

14. The success of Plaintiff's brand has resulted in significant counterfeiting of the THE OFFICE Trademarks. Consequently, Plaintiff has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified numerous fully

5

interactive e-commerce stores, including those operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases"), which were offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of the federally registered THE OFFICE Trademarks (the "Counterfeit Products") to consumers in this Judicial District and throughout the United States.

15. I perform, supervise, and/or direct investigations related to Internet-based infringement of the THE OFFICE Trademarks. Our investigation shows that Defendants are using the Seller Aliases to sell Counterfeit Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Counterfeit Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at which the Counterfeit Products were offered for sale, other features commonly associated with e-commerce stores selling unauthorized products, and because Defendants and their e-commerce stores do not conduct business with Plaintiff and do not have the right or authority to use the THE OFFICE Trademarks for any reason. In addition, each e-commerce store offered shipping to the United States, including Illinois. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

16. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars from U.S.

6

consumers, and, on information and belief, have sold Counterfeit Products to residents of Illinois.

17.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars from U.S. consumers. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the THE OFFICE Trademarks, and none of the Defendants are authorized retailers of genuine The Office Products.

18.     Many Defendants also deceive unknowing consumers by using the THE OFFICE Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for The Office Products. Other e-commerce stores operating under seller aliases omit using THE OFFICE Trademarks in the item title to evade enforcement efforts, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for The Office Products.

19.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

7

20. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

21. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

22. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

23. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

24. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the THE OFFICE Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

25. Monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control of and damage to Plaintiff's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Plaintiff's reputation and goodwill by acts of infringement.

26. Plaintiff's goodwill and reputation are irreparably damaged when the THE OFFICE Trademarks are used in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Plaintiff. Moreover, brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

27. Plaintiff is further irreparably harmed by the unauthorized use of the THE OFFICE Trademarks because counterfeiters take away Plaintiff's ability to control the nature and quality of the Counterfeit Products. Loss of quality control over goods offered for sale or sold under the THE OFFICE Trademarks and, in turn, loss of control over our reputation, is neither calculable nor precisely compensable.

Docusign Envelope ID: DB054D74-84E1-4A56-8F10-4D77FB1AD790

28. The use of the THE OFFICE Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Plaintiff is likely causing and will continue to cause consumer confusion, which weakens Plaintiff's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit Products they have purchased originated from Plaintiff will come to believe that Plaintiff offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine The Office Products, resulting in a loss or undermining of Plaintiff's reputation and goodwill. Indeed, there is damage to Plaintiff's reputation and goodwill even if consumers know that the goods they are purchasing are counterfeit. Prospective consumers who see inferior Counterfeit Products worn by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Plaintiff and the THE OFFICE Trademarks. Such post-sale confusion results in damage to Plaintiff's reputation and correlates to a loss of unquantifiable future sales.

29. Plaintiff is further irreparably damaged due to a loss of exclusivity. The Office Products are meant to be exclusive. Plaintiff's extensive marketing efforts and innovative designs are aimed at growing and sustaining sales. The THE OFFICE Trademarks are distinctive and signify to consumers that the products originate from Plaintiff and are manufactured to Plaintiff's high quality standards. When counterfeiters use the THE OFFICE Trademarks to offer for sale or sell goods without Plaintiff's authorization, the exclusivity of the The Office Products, as well as Plaintiff's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

Docusign Envelope ID: DB054D74-84E1-4A56-8E10-4D77FB1AD790

30.    Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of March 2026 at Universal City, California.

Signed by:

*Monique Cheng Joe*

0CEF98F33F7A4B9...

Monique Cheng Joe

11